USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1832 UNITED STATES OF AMERICA, Appellee, v. KEVIN F. O'BRIEN, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Richard L. Williams,* Senior U.S. District Judge] __________________________ _________________________ Before Selya, Cyr and Boudin, Circuit Judges. ______________ _________________________ Alan Chapman, with whom Chapman & Chapman was on brief, for ____________ __________________ appellant. Timothy Q. Feeley, Assistant United States Attorney, with __________________ whom A. John Pappalardo, United States Attorney, was on brief, ___________________ for the United States. _________________________ February 7, 1994 _________________________ _________________________ *Of the Eastern District of Virginia, sitting by designation. SELYA, Circuit Judge. A jury convicted defendant- SELYA, Circuit Judge. ______________ appellant Kevin F. O'Brien on two hundred ninety counts of making, or causing to be made, false statements related to applications for Medicare benefits, and one hundred thirty counts of converting federal funds to his own behoof.1 After combing the record, we uphold the verdict. I. BACKGROUND I. BACKGROUND We examine the relevant events as a whole, marshalling the evidence in the light most congenial to the prosecution's theory of the case. See United States v. Ortiz, 966 F.2d 707, ___ ______________ _____ 711 (1st Cir. 1992), cert. denied, 113 S. Ct. 1005 (1993); United _____ ______ ______ States v. Maraj, 947 F.2d 520, 522 (1st Cir. 1991). ______ _____ Appellant was the president and sole shareholder of O'Brien Ambulance, Inc. and its lineal descendant, O'Brien Ambulance, Ltd.2 As president of the corporation, appellant served as its chief executive and principal operating officer. ____________________ 1The statutes of conviction can be succinctly summarized. One such statute, now repealed and replaced, at the time provided in pertinent part that any Medicare vendor who "knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any application for any benefit or payment [under the Medicare program]" thereby commits a felony. 42 U.S.C. 1395nn (1987) (repealed). A second statute, still in force, provides in pertinent part that whoever "knowingly converts to his own use or the use of another . . . any voucher, money, or thing of value of the United States or of any department or agency thereof" is guilty of a felony. 18 U.S.C. 641 (1988). The indictment with which we are concerned invokes these statutes and also charges appellant as an aider and abettor, see 18 U.S.C. 2 (1988). ___ 2Notwithstanding the shifting nomenclature, the entity remained the same. Consequently, we refer to the firm, regardless of which appellation claimed preeminence at any given time, as "the corporation." 2 He, and he alone, possessed authority to sign company checks during the period covered by the instant indictment, i.e., from ____ March to August of 1987. During that period, appellant also acted as the corporation's sole director. The corporation ran a licensed ambulance service. It regularly billed Medicare for ambulance services provided to Medicare recipients, with the result that the federal Medicare program accounted for a significant portion of corporate revenues. Many of the corporation's payment requests sought reimbursement for the transportation of Medicare recipients to and from approved kidney dialysis treatments. During the period covered by the indictment, the corporation, in order to maximize the remuneration associated with such services, regularly represented various Medicare recipients as bedridden when, in fact, they were ambulatory; and it also regularly represented trips for dialysis treatments to have been undertaken by ambulance when, in fact, the patients had been transported by van or wheelchair car.3 Corporate records were falsified to camouflage these untruths. Subsequent investigation uncovered the scheme, revealing that, in numerous instances, the corporation's billing practices bore little relation to the reality of events, and that the corporation had bilked the ____________________ 3Carriage by ambulance costs substantially more than carriage by van or wheelchair car. Thus, the Medicare rules restricted reimbursable ambulance transportation to cases involving approved treatments for non-ambulatory patients, and, even then, only if no alternate means of transportation could be employed without endangering the patient's condition. 3 government out of well over $300,000. Based on this, and other, evidence including evidence that, in late 1986 and early 1987, the corporation had been teetering on the brink of insolvency a federal grand jury returned an indictment against appellant.4 Evidence presented at trial showed that, during the six-month period in question, the corporation routinely transported ambulatory dialysis patients in vans or wheelchair cars (often as a group), but nonetheless misrepresented these services in applying for Medicare stipends, saying that they related to individualized transportation of non-ambulatory patients via ambulance. Anticipating appellant's eventual line of defense, the government presented both live testimony and corporate records (in the form, inter alia, of run slips, run logbooks, and _____ ____ documents related to Medicare benefit applications) illustrating the pervasiveness of the criminal conduct. The government showed, through the testimony of corporate employees (some of whom were appellant's kith and kin), that appellant, in his management role, exercised substantial control over the day-to- day operations of the corporation; that, on occasion, he filled in for the dispatcher and assumed other "line" responsibilities; and that, in late 1986, the corporation altered its recordkeeping practices in two significant respects, the net effect of which was to make detection of the forthcoming fraud more difficult. ____________________ 4The indictment was later superseded. The final version of the indictment contained some 435 counts. 4 Finally, the prosecution presented an expert witness who identified appellant's handwriting in connection with ambulance logbook entries, some of which involved the Medicare recipients at issue. As the prosecution had anticipated, appellant offered little contradiction to charges that the corporation made fraudulent representations in seeking Medicare payments and that it unlawfully converted federal funds. Instead, appellant pitched his defense on a relatively narrow ground, denying that he, himself, knew of, or could be held criminally accountable for, the corporation's peccadilloes. At the close of the evidence, appellant moved for judgment of acquittal, Fed. R. Crim. P. 29, principally on this ground. The district court rejected the motion. The jury convicted appellant on four hundred twenty counts (the other fifteen counts in the superseding indictment having been dropped before trial). This proceeding followed. II. THE MERITS II. THE MERITS This is a rifle-shot appeal. Appellant advances only a single assignment of error, claiming insufficiency of the evidence. In reality, he aims his fire at an even smaller target, for he effectively concedes that the government proved the commission of the crimes. Refined to bare essence, then, his appeal stands or falls on the simple proposition that the government failed to prove his complicity in the scheme. We consider his plaint. 5 A. Standard of Review. A. Standard of Review. __________________ The well-settled standard applicable to sufficiency-of- the-evidence challenges requires that this court determine whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational factfinder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime. See Ortiz, 966 F.2d at 711; ___ _____ Maraj, 947 F.2d at 522. In this process, a reviewing court must _____ defer all credibility judgments to the jury. See United States ___ _____________ v. David, 940 F.2d 722, 730 (1st Cir. 1991), cert. denied, 112 S. _____ _____ ______ Ct. 2301 (1992); United States v. Echeverri, 982 F.2d 675, 677 _____________ _________ (1st Cir. 1993); United States v. Serrano, 870 F.2d 1, 5 (1st _____________ _______ Cir. 1989). Contrary to appellant's insinuation, the criminal law does not place a special premium on direct evidence. As a general matter, the prosecution's burden of proof can be satisfied by either direct or circumstantial evidence, or by any combination thereof. See Echeverri, 982 F.2d at 677; United ___ _________ ______ States v. Victoria-Peguero, 920 F.2d 77, 86-87 (1st Cir.), cert. ______ ________________ _____ denied, 111 S. Ct. 2053 (1991). As long as the evidence taken in ______ its entirety supports a judgment of conviction, it need not rule out every other reasonable hypothesis of innocence. See ___ Victoria-Peguero, 920 F.2d at 86-87. ________________ B. Discussion. B. Discussion. __________ Appellant submits that the prosecution introduced no 6 direct evidence that he, himself, committed fraud, aided or abetted another's fraud, or induced some third person to commit fraud. We agree: the government produced nothing in the way of a confession or any other single piece of evidence that, standing alone, might irrefutably prove appellant's guilty knowledge. But a court will not automatically invalidate a conviction merely because the jury based its finding of scienter, and, hence, its verdict, on circumstantial evidence alone. Guilty knowledge, like specific intent, see, e.g., United States v. Desmarais, 938 ___ ____ _____________ _________ F.2d 347, 352 (1st Cir. 1991); United States v. Campa, 679 F.2d _____________ _____ 1006, 1010 (1st Cir. 1982), seldom can be established by direct evidence. This principle has particular pertinence in respect to fraud crimes which, by their very nature, often yield little in the way of direct proof. Unless an accomplice turns, a miscreant confesses, or a suspect is snared by his own rodomontade, prosecutions for fraud must routinely be mounted on the basis of indirect evidence. This approach to proving guilty knowledge is neither legally problematic nor even controversial. The law is long since settled that the prosecution may prove its case without direct evidence of a defendant's guilty knowledge so long as the array of circumstantial evidence possesses sufficient persuasive power. See Maraj, 947 F.2d at 523; United States v. Boylan, 898 ___ _____ _____________ ______ F.2d 230, 242 (1st Cir.), cert. denied, 498 U.S. 849 (1990); _____ ______ United States v. Mount, 896 F.2d 612, 615 (1st Cir. 1990); United _____________ _____ ______ States v. Thornley, 707 F.2d 622, 625 (1st Cir. 1983). Moreover, ______ ________ 7 "[c]ircumstantial evidence tending to show guilty knowledge need not compel a finding of such knowledge in order to sustain a conviction; all that is necessary is that reasonable jurors could be convinced beyond a reasonable doubt that the defendants had guilty knowledge." United States v. Flaherty, 668 F.2d 566, 579 _____________ ________ (1st Cir. 1981); accord United States v. Kilcullen, 546 F.2d 435, ______ _____________ _________ 443 (1st Cir. 1976) (collecting cases), cert. denied, 430 U.S. _____ ______ 906 (1977). In this case, then, the pivotal issue is not whether there is direct evidence of appellant's guilty knowledge. Rather, the proper query hinges on whether a rational factfinder reasonably could infer appellant's guilty knowledge and, hence, his participation in the charged crimes, from the whole of the evidence, bearing in mind the presumption of innocence and the government's burden to prove essential facts beyond a reasonable doubt. We believe this query merits an affirmative answer. Here, the government proved the appellant held the reins of corporate control and had hands-on involvement in the operation of the business. There was testimony, for example, that appellant, himself, spent long hours at the corporate headquarters, ran the company, conducted management and staff meetings, reviewed run logs and weekly schedules of driver assignments and equipment utilization, sometimes assumed the role of dispatcher, and enjoyed sole dominion over the corporation's cash flow. Many of the transportation services described in the fraudulent billings required special hours for drivers, which a jury reasonably could infer affected payroll and appellant's 8 domain unquestionably included payroll. There was more. Appellant's name invariably appeared on Medicare claim forms. He was intimately familiar with the method and manner in which the corporate records were kept, and those records were maintained under his ultimate control. The jury had before it the handwriting evidence, chronicling appellant's authorship of some fraudulent logbook entries, and the evidence of abrupt changes in recordkeeping practices, conducive to covering up the scheme. Finally, the corporation was in dire financial straits, a fact which made more likely the owner's involvement in the illegal enterprise through which the corporation remained afloat. See United States v. McMahon, 938 ___ _____________ _______ F.2d 1501, 1507 (1st Cir. 1991). Appellant invites us to consider each of these pieces of evidence in isolation; and he claims that, taken one by one, each piece can be explained away in some innocent fashion. We decline the invitation. The evidence in a criminal case should be viewed in its totality, see, e.g., United States v. Bourjaily, ___ ____ _____________ _________ 483 U.S. 171, 179-80 (1987), for evidence particularly circumstantial evidence often has an exponential effect. After all, "[t]he sum of an evidentiary presentation may well be greater than its constituent parts." Ortiz, 966 F.2d at 711. A _____ beehive near a country lane tells a stranger very little about the use to which the property is devoted. Yet, if there are eighty or ninety beehives in a shed, who would doubt that he had stumbled upon an apiary? 9 Appellant also says that some witnesses contradicted the inference hawked by the government, offering testimony that tended to show appellant distanced himself from the day-to-day operation of the ambulance service, confined his labors to sales and payroll, delegated much responsibility, and attended the workplace only sporadically. This argument lacks force, for it asks us to usurp the jury's province. See Maraj, 947 F.2d at ___ _____ 523; David, 940 F.2d at 730. "[W]hen the jury is presented with _____ conflicting factual statements, the resolution of the conflict, and any concomitant credibility calls, are uniquely within the jury's province." Ortiz, 966 F.2d at 713; accord United States _____ ______ _____________ v. Rothrock, 806 F.2d 318, 321 (1st Cir. 1986). Therefore, a ________ jury can freely choose to credit particular testimony while discounting other testimony that arguably points in a different direction. See United States v. Alvarez, 987 F.2d 77, 83 (1st ___ _____________ _______ Cir.), cert. denied, 114 S. Ct. 147 (1993). _____ ______ We note, too, that the element of guilty knowledge in a criminal case may be supplied by inferences drawn from evidence suggesting that a defendant deliberately blinded himself to what would otherwise have been obvious. See, e.g., United States v. ___ ____ _____________ Richardson, ___ F.3d ___, ___ (1st Cir. 1994) [No. 92-2307, slip __________ op. at 10-11]; United States v. St. Michael's Credit Union, 880 _____________ ___________________________ F.2d 579, 584-85 (1st Cir. 1989) (collecting cases); United ______ States v. Littlefield, 840 F.2d 143, 147 (1st Cir.), cert. ______ ___________ _____ denied, 488 U.S. 860 (1988); United States v. Picciandra, 788 ______ _____________ __________ F.2d 39, 46 (1st Cir.), cert. denied, 479 U.S. 847 (1986). In _____ ______ 10 this case, the stage was appropriately set for such an inference: although appellant claimed a lack of knowledge, the facts, taken in the light most hospitable to the government, see Ortiz, 966 ___ _____ F.2d at 711, strongly suggested that, given the widespread nature of the fraud and the importance to the corporation of the extra revenues generated by it, only a conscious course of calculated ignorance could have kept the company president from knowing the truth. The trial court charged the jury on this principle, the record supports the instruction, and appellant has not assigned error to it. In itself, the resultant inference suffices to validate the finding of guilty knowledge. We will not paint the lily. Here, there was a plenitude of evidence from which the jury rationally could have inferred that appellant was a perpetrator of the crime, not an innocent bystander. Indeed, when the extensive evidence showing appellant's involvement in the corporation's day-to-day affairs is coupled with the pervasiveness of the fraud and appellant's powerful economic motive, it seems entirely reasonable to conclude that appellant knew of, and participated in making, false statements to procure Medicare funds to which the corporation had no entitlement. This conclusion becomes compelling when we recall that, in gauging witness credibility and choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense. See United States v. Vargas, 945 F.2d 426, 429 (1st Cir. ___ _____________ ______ 1991); United States v. Smith, 680 F.2d 255, 260 (1st Cir. 1982), _____________ _____ 11 cert. denied, 459 U.S. 1110 (1983). There are limits to _____ ______ coincidence. III. CONCLUSION III. CONCLUSION We need go no further.5 In this instance, the convergence of several lines of circumstantial evidence formed a river of proof sufficient to warrant the jury's finding. See ___ Victoria-Peguero, 920 F.2d at 86-87. And because the evidence ________________ need only support the verdict, rather than compel a conviction, see Echeverri, 982 F.2d at 678; Boylan, 898 F.2d at 243, ___ _________ ______ appellant's assignment of error founders. In the last analysis, courts ought not stubbornly insist that criminal juries disregard the obvious. See United States v. Ingraham, 832 F.2d 229, 240 ___ _____________ ________ (1st Cir. 1987), cert. denied, 486 U.S. 1009 (1988). _____ ______ Affirmed. Affirmed. ________ ____________________ 5Our determination that the evidence supports the verdict on the "false statement" counts removes any need to consider the specifics of the case in respect to the 130 counts charging criminal conversion of public funds. As appellant owned the corporation, the ill-gotten gains necessarily inured to his benefit. 12