**UNITED STATES of America,
Plaintiff,**

v.

**Carlos Cabrera GEIGEL, Defendant.**

**Criminal No. 06–054(DRD).**

United States District Court,
D. Puerto Rico.

Nov. 20, 2007.

205

Antonio R. Bazan–Gonzalez, United States Attorney's Office, San Juan, PR, for Plaintiff.

## ORDER DENYING DISMISSAL

DANIEL R. DOMINGUEZ, District Judge.

Defendant, Carlos Cabrera Geigel, hereinafter referred to as "Carlos Cabrera," has requested dismissal pursuant to Fed. Crim. P. 29(a). The court denies the request since the request in the court's opinion presents purely issues of weighing of evidence and/or credibility determinations which belong to the jury. The court briefly explains.

### THE INDICTMENT

Defendant, Carlos Cabrera, was indicted in the instant case together with another co-defendant named Aneudy Reyes–Lamiz aka "More."[1] They were both charged with a two-count indictment involving a two-count indictment. In Count One, both defendants were charged with perpetrating, a bank robbery, in an aiding and abetting fashion, of a branch of Banco Popular de P.R. at Miramar in San Juan, Puerto Rico, a bank branch whose deposits were insured at that time by the Federal Deposit Insurance Corporation. The amount allegedly stolen was Thirty-five thousand five hundred eighty dollars ($35,-580.00). The assault of the bank allegedly put in jeopardy the life of another person by the use of a dangerous weapon, that is a firearm. All in violation of Title 18 U.S.C. § 2113(a), 2113(d), and § 2. In Count Two both co-defendants were charged together with a co-defendant named Juan Quiñonez Silva of knowingly using and carrying and brandishing firearms during and in relation to a crime of violence, two pistols, of unknown brands and caliber, during and in relation to a violation of 18 U.S.C. 2113(a), 2113(d) and § 2, Count One of the indictment, all in violation of 18 U.S.C. § 924(c)(1)(A)(ii).

The other named co-author, but unindicted, in this case, Juan Quiñonez Silva, was previously charged with assaulting the same bank on that same date in criminal case 04–219 before District Judge Carmen Consuelo Cerezo. He ultimately plead guilty and cooperated in this case by identifying the individuals who appeared in the live video taken on the date of the armed robbery.

### THE RULE 29(A) STANDARD

 The standard that the court must follow is well known. The trial court must

1. Aneudy Reyes–Lamiz plead guilty prior to trial. See Docket Nos. 34, 35 and 36.

discern "whether, after assaying all the evidence in the light most amiable to the government, and taking all reasonable inferences in its favor, a rational fact finder could find, beyond a reasonable doubt, that the prosecution successfully proved the essential elements of the crime." *United States v. O'Brien*, 14 F.3d 703, 706 (1st Cir.1994).

The court is further required to "consider all the evidence, direct and circumstantial, and resolve all evidentiary conflicts in favor of the verdict." *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir.), cert. denied, 520 U.S. 1258, 117 S.Ct. 2424, 138 L.Ed.2d 187 (1997).

The standard has been constantly repeated and followed as set by the First Circuit, for example, in the case of *United States v. Hernández*, 146 F.3d 30, 32 (1st Cir.1998), (a jury can freely choose to credit particular testimony while discounting other testimony that arguably points in a different direction); *United States v. Maraj*, 947 F.2d 520, 522–523 (1st Cir. 1991); *United States v. Taylor*, 54 F.3d 967, 974 (1st Cir.1995).

## THE FACTS

Juan Quiñonez–Silva, aka "Cartucho" [2], hereinafter referred to as Juan Quiñonez, testified that he was invited to assault the Miramar branch of the Banco Popular de P.R. by Cristian Soto Cosme aka "Chino," who was indicted and plead guilty of the same bank assault before District Judge Juan Pérez–Giménez in criminal cases 06–53 and 06–55.[3]

Cristian Soto Cosme recluted Juan Quiñonez by informing him that he had found a suitable bank to rob. See Docket No. 110, 5/29/07, p. 82–82.

Juan Quiñonez scouted the bank at around 1:00 p.m. on May 10, 2004, Ex. 6, 7, 8, and decided that the bank was an acceptable target for assault since the bank according to Soto Cosme had good traffic arteries that enabled a quick exit to a super highway. Juan Quiñonez was the planner of all subsequent details of the robbery. He decided the specific position of the escape car, who was to be the driver, who was to enter the bank and who remained outside the door of the bank, as well as the positions of the bank robbers within the bank. See Docket No. 110, Tr., p. 84–105. Juan Quiñonez assigned himself the role of going behind the tellers' counter to extract the money from the tellers. He also decided the exact escape routes as well as the other personnel needed to rob the bank including the two named defendants in the instant case. See Docket No. 110, Tr., p. 84–90. The bank robbery also involved a prior car jacking the night before the bank robbery, which was performed by unindicted co-defendant Cristian Soto Cosme.[4]

---

**2.** "Cartucho" in Spanish is translated as a "dinamite stick" or a shot gun "pellet" encasing.

**3.** Cristian Soto Cosme was not charged by name in the instant case but he was identified as a participator by the cooperator Juan Quiñonez. He was one of the "others not charged in this indictment." (Counts One and Two). Soto Cosme was thus identified as one of the unindicted co-conspirators. Soto Cosme visited the bank in the morning at 9:35 am of May 10, 2004, see, Ex. 4 and 5 still photo frame and testimony of cooperator

Juan Quiñonez identified him in the video. (D. 110, Tr., p. 116–119), Video Ex. 3. Juan Quiñonez did not however testify that Soto Cosme plead guilty before Judge Pérez–Giménez.

**4.** The victim of the car jacking, John Douglas Hedge, testified at trial identifying his car as a green Volvo. See Docket No. 118, Tr., p. 137–140; see also Ex. 21, the car jacked vehicle. The car was used as the initial get away car, abandoned shortly thereafter by the bank robbers, who changed to another car. See Docket No. 110, Tr., p. 104–105.

Co-defendant Carlos Cabrera Geigel, also known as "Billy," was one of the co-defendants who entered the bank and was in charge of lining up and guarding the customers who entered the bank as the robbery was taking place. See Docket No. 110, Tr., p. 88–89. He was strategically located in a way that made it difficult for the cameras to focus on him since there was a strong back light to his person and he was strategically positioned far away from the camera. Unfortunately for co-defendant Carlos Cabrera when he entered the bank for the first time the camera focused on him for a short period of time and that image was subject to video freezing and photo taking, corroborating his identity with the testimony of Juan Quiñonez, who further explained Carlos Cabrera's role in the offense. See Ex. 9, still video photograph. Furthermore, Carlos Cabrera was one of the perpetrators who carried and brandished a weapon during the assault. The specific role of defendant was to line up costumers within the bank and/or watch for entering customers. See Docket No. 110, Tr., 88–89 (The court does not recall observing any customers entering the bank from the video, during the short time duration of the assault.) The perpetrators were successful in the assault of the bank stealing around thirty-five thousand dollars, avoiding obvious identification by using common street clothes, like shirts and long pants together with baseball type hats, and by escaping to the rapid transit arteries. (But three of them were notwithstanding clearly photographed by the video. See Ex. 9, and 10).

Juan Quiñonez perpetrated the crime together with various cohorts including Carlos Cabrera as was testified by him and corroborated by the video which was shown to the jury as he testified. Further, at least two bank victims, testified as to Juan Quiñonez brandishing a weapon to the bank tellers and a further victim John Douglas Hedge corroborated that he was subject of a car jacking the night prior to the bank assault. The victim of the car jacking further identified his car, as a car used as an escape vehicle. See infra note 3.

## THE LAW

The court must verify that sufficient facts are present to satisfy the essential elements of the crime as to the two counts of the indictment.[5] *United States v. O'Brien*, 14 F.3d at 706.

The cooperator Juan Quiñonez stated that he scouted Banco Popular at Miramar Branch the early afternoon of May 10, 2005. See Docket. No. 110, Tr., p. 120–123. He recruited various persons including defendant Carlos Cabrera. See Docket No. 110, Tr., p. 82–89. (Soto Cosme aka "Chino" recruited Juan Quiñonez and Quiñonez subsequently recruited co-defendant Carlos Cabrera, also known as "Billy" and co-defendant Aneudy Reyes–Lamiz aka "More," at a Public Housing facility in San Juan. See Docket No. 110, Tr., p. 82–89). They subsequently executed the plan. The robbery barely lasted two minutes as can be corroborated by Ex. 2, still video frame at 3:17 p.m., Ex. 2 "we are coming in to carry the bank robbery." See Docket No. 110, Tr., p. 134. Cooperator Juan Quiñonez perpetrated the robbery together with co-defendants Carlos Cabrera and Aneudy Reyes–Lamiz. See Docket No. 110, Tr. p. 134. At 3:19:52 p.m., Ex. 2, they had already left pursuant to Juan Quiñonez's testimony. See Docket No. 110, Tr., p. 10–11. During the two minutes of the robbery, the United States Attorney

---

5. The elements of the crime can be found at Jury Instruction No. 23 and No. 24 at Docket 122.

stopped the video to show the jury a few still frames that are quite revealing complying with the elements of the crime pursuant to the testimony of Juan Quiñonez. At 3:18:04 p.m. of the video, Ex. 2, Juan Quiñonez is seen on the way to the tellers; Billy, as Juan Quiñonez referred to Carlos Cabrera, was on the way to guard the door from inside of the bank and "More," co-defendant Aneudy Reyes–Lamiz, is on the way to the information center to "silence" the secretaries (the loan office). "More," simply placed the secretaries, loan officers, on the floor, as the video shows no person at the desks of the loan offices during the two (2) minutes of the robbery. See Docket No. 110, Tr. p. 135.[6] Juan Quiñonez referred to himself as being "armed" during the robber of the bank. See Docket No. 110, Tr., p. 135.

Mr. Heber Guzmán testified identifying himself as an official of the bank, and stated that he was not able to return to work the next day because of the threat he experienced caused by the robbery. He further stated that the person that assaulted the teller was armed and told every one to drop to the floor. See Docket No. 119, Tr., p. 8–9. Furthermore, female bank executive, Carmen Iraida Marrero, teller supervisor, also corroborated Quiñonez's testimony of being armed in a dramatic fashion by testifying that as she went to the tellers area she was ordered by the bank robber to drop to the floor as he pointed a gun at her head or he would "blow her head off." See Docket No. 119, Tr., p. 22–23.

At the video still at 3:18:05 p.m., Ex. 2, as narrated by cooperator Juan Quiñonez, "Billy" can be observed already guarding the door in the inside of the bank situated to handle inside coming customers and "More" can be observed in an orange shirt.

See Docket No. 110, Tr., p. 137. At 3:18:11 p.m. a still of the video, Ex. 2, demonstrates Juan Quiñonez aka "Cartucho" in the area of the tellers with a yellow shirt and a red and black cap with tellers on the floor. The tellers had been ordered by Juan Quiñonez to "hit the ground" or "their heads would be blown off." See Docket No. 110, Tr., p. 138–139. "Cartucho" also confirmed that he had told executive teller supervisor, Carmen Iraida Marrero, as he pointed the gun at her, that she was to hit the ground or "he would blow her head off." See Docket No. 110, Tr., p. 139. At yet another still video frame at 3:18:19 p.m., Ex. 2, "More," co-defendant Aneudy Reyes, is being described by Juan Quiñonez as guarding the "secretaries," loan offices, as they lay on the floor. See Docket No. 110, Tr., p. 140. At still video frame 3:18:30 p.m., Ex. 2, Juan Quiñonez describes that "Billy," co-defendant Carlos Cabrera, is with a gun in front of his thigh. See Docket No. 110, Tr., p. 148–149. Further, at still video frame at 3:18:35 p.m., Ex. 2, Juan Quiñonez is observed cleaning the cash registers (picking up the money), and placing the money in a pillow case. See Docket No. 110, Tr., p. 150. At still video frame of 3:19:01, Ex. 2, Juan Quiñonez is finishing collecting the money. See Docket No. 118, Tr., p. 4. By this time, the defendants had exited the bank, as seen on still frame 3:19:52, Ex. 2. See Docket No. 118, Tr., p. 10–11.

The United States produced various still photos from the video relating to the bank assault, Ex. 9 and 10. At Ex. 9 taken within the bank early on in the assault. For example at 3:18:03 p.m., Ex. 2, cooperator Juan Quiñonez can be observed with his back to the photo (head cut of); defendant Carlos Cabrera is in the middle also

---

6. At Ex. 3, a video taken in the morning and early afternoon prior to the bank robbery, the loan officers are seen working at their desks.

At Ex. 2, a video during the robbery, the desks are seen empty as the loan officers were on the floor.

with a baseball cap, his head looking to the front; co-defendant Aneydy Reyes–Lamiz is seen passing in front of the information center heading to the "secretaries," the loan officers. At Ex. 10, (also still photo frame from the video), at 3:18:04 p.m., Ex. 2, Juan Quiñonez is seen now directly in front of the counter; defendant Carlos Cabrera is heading to the door to receive the incoming customers and Aneudy Reyes–Lamiz is on his way to the "Secretaries" area. The photographs are quite in focus and of sharp clear image. Notwithstanding, as to the identity of the persons involved in each photograph "the jury is free to determine, on the basis of photographs [or videos], whether [the defendant][or the cooperator] was one of the men who had been photographed participating in the robbery." *United States v. Murray*, 523 F.2d 489, 491 (8th Cir.1975) citing *United States v. Wilkins*, 477 F.2d 323 (8th Cir.), cert. denied 414 U.S. 843, 94 S.Ct. 103, 38 L.Ed.2d 81 (1973); *Mikus v. United States*, 433 F.2d 719 (2nd Cir.1970); *United States v. Hobbs*, 403 F.2d 977 (6th Cir. 1968).

Juan Quiñonez is also seen prior to the assault within the Miramar branch of Banco Popular that same day early in the afternoon. See Governments Ex. 7, four (4) photos of the videos taken at 1:13:56 p.m.; 1:14:01 p.m.; 1:14:02 p.m., and 1:14:13 p.m. All of these still photos are from the video that same morning and early afternoon of the video, Ex. 3. See Docket No. 110, Tr., p. 120–123. Further, early in the morning at 9:35 a.m., Ex. 4, non indicted co-defendant Cristian Cosme Soto aka "Chino" [7], is clearly seen in a color still photo wearing a blue and white short at the extreme upper left of Ex. 4. (He is also seen clearly in two

other photos, extreme upper right and lower left of said Ex. 4. See Docket No. 110, Tr., p. 116–119). Hence, the testimony of Juan Quiñonez is corroborated by the video as to the participating non indicted "Chino" surveying the bank in early morning and as to Juan Quiñonez conducting a surveillance at around 1:00 p.m., Ex. 3 (video) and Ex. 4 (still photographs from the video). Further, Quiñonez's testimony is corroborated as to co-defendants, Carlos Cabrera, "Billy," and Aneudy Reyes–Lamiz, "More," participating in an armed bank robbery at around 3:00 p.m. by the video, Ex. 2.

The court is of the opinion that all the elements of the offense are fully satisfied by the testimony of the cooperator Juan Quiñonez as well as the victims Heber Guzmán and Carmen Iraida Marrero, the certification issued as to the Banco Popular branch of Miramar being insured by the Federal Deposit Insurance Corporation as a bank in Hato Rey, Ex. 24 and the loss due to the robbery testified by bank auditor Angel García, Ex. 22.

The court briefly recapitulates. As to Count One, a bank robbery under 18 U.S.C. 2113, aggravated bank robbery, the parties had no objection to the court's Instruction No. 23, (Docket 122), borrowed from the Pattern Criminal Jury Instructions for the First Circuit, West Group 1998, Instruction No. 4.18.2113(a)(d) (updated 2/17/05).[8] Said Instruction authored by Hon. D. Brock Hornby contemplates four elements:

First, that the defendant aided and abetted others to take money belonging to the Banco Popular de Puerto Rico from a bank employee or from the Banco

---

**7.** Cristian Cosme Soto was indicted and plead guilty in a separate case as to this same bank robbery in criminal Cases No. 06–053 and 06–055 before Judge Pérez–Giménez. (See footnote 3, infra.)

**8.** No objections were lodged as to any instruction.

Popular de Puerto Rico while a bank employee was present;

Second, that the defendant aided and abetted others and/or himself used intimidation or force and violence when he did so;

Third, that at the time, the deposits of the Banco Popular Bank of Puerto Rico were insured by the Federal Deposit Insurance Corporation. The parties have so stipulated (relating to this third element only, the parties so stipulated), and

Fourth, that the defendant aiding and abetting others and/or himself did use a dangerous weapon or device, assaulted someone or put someone's life in jeopardy.

The first element, taking money belonging to a bank from the bank employee or while a bank employee is present is satisfied by the testimony of cooperator Juan Quiñonez, describing the video as the money is being taken while tellers are on the floor, and the corroboration of the testimony by bank executive Carmen Iraida Marrero. As to the defendant subject of the trial, Carlos Cabrera Geigel, the cooperator stated that he recruited him the same date to participate in the robbery; that he was subsequently present within the bank, that he was armed, next to the entrance door, and guarded customers who had entered and/or where about to enter the bank. Cooperator Quiñonez further testified that Carlos Cabrera could be seen in the video armed next to the door. The second element, that the defendant aided and abetted others and/or used intimidation was also satisfied by both Quiñonez's testimony and bank executive Carmen Iraida Marrero. The defendant, Carlos Cabrera, using the same evidence, clearly aided and abetted others in the bank robbery by aiding as a guard; further Carlos Cabrera himself intimidated by the use of a weapon.

Third, that the deposit of the Banco Popular were insured by the FDIC. The FDIC produced a certificate admitted and stipulated.

Fourth, that the defendant aiding and abetting others and/or himself did use a dangerous weapon or device assaulted someone or put someone's life in jeopardy. The defendant aided and abetted in the bank robbery as the cooperator, Juan Quiñonez, pointed a weapon at the tellers and also stated to Carmen Iraida Marrero to hit the floor or her head would be blown off. (Testimony of both the cooperator and the victim.) Further, the defendant himself, Carlos Cabrera Geigel, possessed and brandished a weapon during the bank robbery himself. Hence, all elements of an armed bank robbery have been fully met by sufficient evidence.

■ As to count two, a use of a firearm during and in relation to a crime of violence, the court provided, without any objection of any of the parties, the standard instruction for such crime at Instruction no. 24, Docket 122. Said instruction was borrowed again from the Pattern Jury Instructions for the First Circuit, cited infra, Instruction No. 4.18.924 (updated 8/25/06). Said instruction requires two elements:

First: that the defendant committed the crime of violence, the bank robbery, as described in Count One; and

Two: that defendant knowingly used or carried a firearm during and in relation to the commission of that crime.

The first element "that the defendant committed a crime of violence" constitutes first a question of law and then a question of fact.

As to whether, as a matter of law, an aggravated bank robbery constitutes a crime of violence, the matter was decided in the case of *United States v. Jones*, 932 F.2d 624, 625 (7th Cir.1991); see also

*United States v. Sahlin,* 399 F.3d 27, 29 (1st Cir.2005) (indicating in passing that an armed bank robbery constitutes a crime of violence). As to defendant participating, as a matter of fact, in the armed bank robbery see discussion as to his participation at elements numbers 1, 2, and 4, as to an armed bank robbery infra. As to the second element of the crime, as to the use and/or brandishing of a weapon during and in relation to a crime of violence, that the defendant used or carried (brandished) a weapon during the commission of a crime see discussion of element number 4 of the bank robbery and/or had constructive possession of the weapon used by "Cartucho" or by "More." Again the elements of the crime, as to count 2, have been duly satisfied.

Against the overwhelming evidence of guilt the defendant offered the testimony of Sonia María Martínez Geigel. See Docket No. 129, Tr., p. 10–42.

Ms. Sonia Martínez Geigel is the cousin of defendant Carlos Cabrera Geigel. She is also the political aunt of Carlos Cabrera Geigel. She was further in love with Cartucho's brother, also known as "Cartuchito".[9] Ms. Martínez Geigel had a son with Cartuchito. Notwithstanding Cartuchito and Cartucho had a rivalry and competed for her love. She testified that she moved to the United States, Holyoak, Mass, on January 10, 2003. See Docket No. 129, Tr., p. 10. However, the ticket she produced was an American Airline ticket to New York City. See Ex. B; see also Docket No. 129, Tr., p. 13–14. This testimony meant that Cartucho could not have interviewed Carlos Cabrera at her apartment in San José Public Housing on the morning of May 10, 2004 since Ms. Martínez Geigel had moved to Massachusetts since January 2003. However, she stated that she returned to Puerto Rico "a couple of times." See Docket No. 129, Tr., p. 27. She also stated that Carlos Cabrera and Cartucho had a heated argument in the 2000. See Docket No. 129, Tr., p. 29–30; this testimony provided a motive for Cartucho to incriminate co-defendant Cabrera Geigel. Finally, Ms. Sonia Martínez Geigel admitted to be claiming a mental incapacity from the Social Security. See Docket No. 129, Tr., p. 29–30.

The jury obviously did not provide weight to the testimony of Sonia Martínez Geigel for, amongst others, the following reasons: (a) She was a cousin and aunt of Carlos Cabrera, (b) she alleged to have moved to Holyoke, Mass, but only produced a ticket to New York City; (c)she was involved in a love triangle between Cartucho and his brother Cartuchito but preferred Cartuchito since she had a baby from him; (d) she admitted to have requested a mental incapacity to the government authorities.

As a matter of law, furthermore, the court must examine the evidence in the light most favorable to the verdict meaning the jury can disregard testimony against the verdict. *United States v. Hernández,* 146 F.3d at 32.

Therefore, examining all the evidence in "the light most amiable to the government," *United States v. O'Brien,* 14 F.3d at 706, as recapitulated above, Defendant's Motion to Dismiss (Docket No. 112), Under Fed. R. Cri. P. 29, is **DENIED.** The court shall proceed to sentencing of co-defendant Carlos Cabrera Geigel.

**IT IS SO ORDERED.**

---

**9.** "Cartuchito" is the diminutive of "Cartu- cho." (See footnote 2, infra).