HAWKINS, Circuit Judge.
Following a jury trial, defendant Carlos Javier Mayml-Maysonet (“Maymi”) appeals his convictions for conspiring to possess and aiding and abetting to possess with intent to distribute five kilos or more of cocaine. Maymi contends there was insufficient evidence to sustain the conviction. We affirm.
FACTS AND PROCEDURAL HISTORY
In July 2012, Homeland Security agents were conducting an undercover sting operation at the Hampton Inn & Suites in Isla Verde, Carolina, Puerto Rico. Posing as sellers, they planned a sham drug transaction for five kilos of cocaine at $19,000/kilo. Agents were stationed outside the hotel conducting surveillance and inside a hotel room posing as drug traffickers. The primary target of the investigation was co-defendant Tirson Rodriguezr-Belliard (“Rodriguez”). To arrange the transaction, the agents were using the cooperation of a confidential informant (“Cl”), who did not testify at trial.
Around noon, an agent observed Rodriguez and a companion, later identified as co-defendant García-Calderón (“García”) arrive, park on a service road, and walk towards the nearby Lupi’s Restaurant. Around 1:11 p.m., the agent saw Rodriguez and Garcia returning from the restaurant, now accompanied by defendant Maymi. The three went to the area where Rodriguez had parked and statióned themselves against a fence.
Shortly thereafter, around 1:37 p.m., the trio were joined by the Cl. The men' spoke for about three minutes, and then the Cl left and walked towards the hotel. At 1:59 p.m., the three defendants walked towards the Hampton Inn; Rodríguez and Garcia positioned themselves near the driveway entrance, while Maymi headed towards a nearby cockfighting ring. Two minutes later, a red Suzuki vehicle exited the cockfighting ring parking lot and drove past the Hampton Inn; the agent could not see who was driving or how many passengers were in the vehicle.
The red Suzuki returned seventeen minutes later (at 2:18 p.m.) and drove into the Hampton Inn parking lot through its driveway entrance and parked. Rodriguez and Garcia had remained stationed by the hotel driveway while the vehicle was gone. Upon its return, they followed it into the hotel parking lot and out of the view of the agent. Two minutes later (2:20 p.m.), the agents inside the hotel received the call indicating the money for the drugs had arrived. At 2:26, Rodríguez and Garcia met the Cl in front of the hotel lobby and were joined by the agents inside the hotel. Rodriguez was now carrying a black bag.
Garcia asked the agents if they would go upstairs, count the money, and send the narcotics down for somebody else to take it away (“bring down the work so that the guys can leave.... ”). Rodriguez, the Cl, and one of the agents went upstairs while García and the other agent remained in the hotel lobby. The agent asked Garcia if he had eaten, and Garcia replied that he and his companions had eaten.
Rodriguez was arrested upstairs in the hotel room. Agents seized the black bag, which contained $92,500. Rodriguez also had $10,000 in his pocket. At approximately the same time, Garcia was arrest *236 ed. Three individuals were also arrested in the red Suzuki — the driver, another passenger, and Maymi. At the time of his arrest, immediately after exiting the back seat of the vehicle, Maymi was found to have $10,500 in cash on his person.[1]
The U.S. Attorney’s Office decided not to prosecute the driver and other passenger in the Suzuki, but did bring indictments against Maymi, García, and Rodriguez. The government also decided not to use the Cl as a witness. García and Rodriguez pled guilty prior to trial. After Maymi’s two-day trial, the jury returned a verdict of guilty on both counts. Maymi moved for a judgment of acquittal, which the court denied. Maymi was sentenced to 240 months in prison and 10 years of supervised release.
STANDARD OF REVIEW
We review “preserved challenges to the sufficiency of the evidence de novo.” United States v. Peña, 586 F.3d 105, 111 (1st Cir.2009). We must view “the evidence, both direct and circumstantial, in the light most favorable to the prosecution and decide whether that evidence, including all plausible inferences drawn therefrom, would allow a rational factfinder to conclude beyond a reasonable doubt that the defendant committed the charged crime.” United States v. Cruz-Rodríguez, 541 F.3d 19, 26 (1st Cir.2008).
DISCUSSION
Maymi contends that the government failed to present sufficient evidence that he knowingly joined a conspiracy or knowingly aided and abetted Rodriguez and Garcia in committing a crime. While there is no direct evidence of Maymi’s knowledge in this case, reliance on indirect evidence is “both permissible and commonplace,” United States v. Spinney, 65 F.3d 231, 234 (1st Cir.1995); circumstantial evidence and the inferences drawn from it may be sufficient to sustain a conviction. United States v. Loder, 23 F.3d 586, 589-90 (1st Cir.1994). The evidence need not exclude “every possible hypothesis of innocence” to support the convictions. See United States v. Quejada-Zurique, 708 F.2d 857, 861 (1st Cir.1983). However, “if the evidence viewed in the light most favorable to the verdict gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence of the crime charged, this court must reverse the conviction.” United States v. Flores-Rivera, 56 F.3d 319, 323 (1st Cir.1995). Nonetheless, the “evidence in a criminal case should be viewed in its totality, for evidence — particularly circumstantial evidence — often has an exponential effect.” United States v. O’Brien, 14 F.3d 703, 707 (1st Cir.1994) (citation omitted).
Maymi argues that his presence at the scene of the meeting between the co-defendants and the Cl cannot demonstrate his willing participation in the illegal activities. The jury here was properly instructed that mere presence at the scene of a crime is not enough, but that the requisite intent may be inferred from the surrounding circumstances. See id. at 859. In addition, “[j]urors can be assumed to know that criminals rarely welcome innocent persons as witnesses to serious crimes and rarely seek to perpetrate felonies before larger-than-necessary audiences.” United States v. Ortiz, 966 F.2d 707, 712 (1st Cir.1992).
Furthermore, Maymi was not only present at the meeting with the Cl, he was also found in the backseat of the red Suzuki in the hotel parking lot with a substantial amount of cash on his person. The car departed the parking lot two *237 minutes after Maymi returned from the conversation by the fence with the co-defendants, and returned to the hotel two minutes before the co-defendants notified the agents they had the money for the deal. The co-defendants waited at the entrance of the hotel parking lot, watched the vehicle leave, and walked in its direction when it returned. And, minutes after the vehicle returned, Rodriguez was spotted in the parking lot with a black bag in his hands — the same black bag that would be found to contain the money to be used to purchase the drugs. This timing supports an inference that the car left to pick up the money for the transaction. “When a plausible read of the record supports the verdict, we will not overturn the jury’s determination on appeal.” United States v. Morales-de Jesús, 372 F.3d 6, 21 (1st Cir.2004).[2]
If each piece of the puzzle were viewed individually, then Maymi would have a better argument. But taken altogether, the indirect evidence pushes these “mere coincidences” over the edge. See O’Brien, 14 F.3d at 707 (“A beehive near a country lane tells a stranger very little about the use to which the property is devoted. Yet, if there are eighty or ninety beehives in a shed, who would doubt that he had stumbled upon an apiary?”). Jurors “are neither required to divorce themselves from their common sense nor abandon the dictates of mature experiences.” United States v. Hernández, 995 F.2d 307, 314 (1st Cir.1993). Viewing the evidence in the light most favorable to the government, as we must, we cannot say that the evidence “gives equal or nearly equal circumstantial support to a theory of guilt and a theory of innocence,” Flores-Rivera, 56 F.3d at 323. Here, there are too many proximate connections between Maymfs actions and those of the drug traffickers. And so the jury could reasonably infer Maymfs knowing participation in or aiding and abetting the conspiracy from the sequence of events.
AFFIRMED.

. The parties stipulated at trial that this money was returned to Maymi.

. We also note that we are called upon to consider "the record evidence (and any reasonable inferences therefrom) as a whole ...” to determine whether the evidence is sufficient to sustain the verdict. United States v. Downs-Moses, 329 F.3d 253, 261 (1st Cir.2003) (emphasis added). Thus, we will not engage in speculation about what stronger evidence the government could have presented in its case-in-chief. We ask only whether the evidence it did present, viewed in the light most favorable to the prosecution, would have permitted a rational jury to find the defendant guilty beyond a reasonable doubt. Id. The civil cases cited by the dissent in footnote 1 do not alter our task.