# United States Court of Appeals
## For the First Circuit

No. 12-1590

UNITED STATES OF AMERICA,

Appellee,

v.

KAREEM WILLIAMS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF RHODE ISLAND

[Hon. William E. Smith, U.S. District Judge]

Before

Torruella, Selya and Lipez,
Circuit Judges.

Judith H. Mizner, Assistant Federal Public Defender, with whom Rheba Rutkowski, Assistant Federal Public Defender, was on brief, for appellant.
Donald C. Lockhart, Assistant United States Attorney, with whom Peter F. Neronha, United States Attorney, was on brief, for appellee.

May 17, 2013

**SELYA, Circuit Judge.** In a run-up to this case, a thrice-convicted felon and his confederates attended a backyard barbecue at which firearms were openly displayed. They subsequently reconvened at the scene of a planned robbery. Although the robbery was never consummated, the police arrested the convicted felon, defendant-appellant Kareem Williams, on firearms charges. During his ensuing trial, the district court admitted evidence of his statements to the police about events occurring at the cookout. The jury convicted, and the defendant now challenges both the sufficiency of the government's proof and the admissibility of the statements. We affirm.

We start with the travel of the case. A federal grand jury indicted the defendant on charges of possessing a firearm as a convicted felon (count 1) and possessing a firearm with an obliterated serial number (count 2). See 18 U.S.C. § 922(g)(1), (k). At the close of all the evidence, the defendant moved unsuccessfully for judgment of acquittal. See Fed. R. Crim. P. 29. The jury found the defendant guilty, and the court sentenced him, as an armed career criminal, to a 15-year prison term. See 18 U.S.C. § 924(e)(1). This timely appeal ensued.

The defendant's principal claim of error is that the district court should have granted his motion for judgment of acquittal because the evidence did not allow a rational jury to find beyond a reasonable doubt that he knowingly possessed the guns

-2-

charged in the indictment.  In determining whether the evidence suffices to sustain a conviction, we draw the facts and all reasonable inferences therefrom in the light most agreeable to the jury verdict.  See United States v. Walker, 665 F.3d 212, 224 (1st Cir. 2011); United States v. Troy, 618 F.3d 27, 29 (1st Cir. 2010). "To uphold a conviction, the court need not believe that no verdict other than a guilty verdict could sensibly be reached, but must only satisfy itself that the guilty verdict finds support in 'a plausible rendition of the record.'"  United States v. Echeverri, 982 F.2d 675, 677 (1st Cir. 1993) (quoting United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)).  This is the same indulgent standard that the district court was duty bound to employ in passing upon the defendant's Rule 29 motion, and we review the district court's denial of that motion de novo.  See United States v. Dwinells, 508 F.3d 63, 72 (1st Cir. 2007).

The evidence, scrutinized favorably to the verdict, reveals the following.  At 12:39 a.m. on June 20, 2011, a police officer, Daniel Dempsey, responded to a dispatch call about suspicious activity on Paine Avenue, Cranston, Rhode Island.  When Dempsey arrived at the scene, he saw two stopped vehicles: an Acura in front and a Nissan Maxima behind.  Dempsey drove toward the Acura until he was nose-to-nose with it.  Using the spotlight on his cruiser, Dempsey saw four men inside the Acura.  He stepped into the street and ordered the driver of the Acura to shut off the

engine.  Instead of heeding this command, the driver began traveling in reverse.  So did the driver of the Maxima.

The Acura spun around and sped away, and the Maxima continued traveling backwards.  Dempsey returned to his vehicle, pursued the Maxima, and ultimately collided with it.

Dempsey stepped out into the street and drew his weapon, ordering the occupants of the Maxima to raise their hands.  The driver (Indya Rivers) and the front-seat passenger (Helluva Brown) complied immediately.  The defendant, who was sitting in the back seat, did not comply; Dempsey observed him "moving around . . . towards the center area of the seat."  Dempsey could see the back of the defendant's right shoulder but could not see what he was doing with his hands.  It was only after Dempsey reiterated his command several times that the defendant finally raised his hands.

Once back-up arrived, Dempsey ordered Rivers, Brown, and the defendant out of the Maxima.  The defendant initially failed to comply and exited the vehicle only after Dempsey repeated his command.

Officer James McQuinn searched the Maxima.  He noticed that the armrest in the center of the back seat was "ajar [and] was sticking out.  It wasn't flush with the back seat."  McQuinn pulled the armrest all the way down, exposing a pass-through (that is, an opening that led to the trunk of the car).  Inside the trunk — a few inches away from the pass-through — were two fully loaded guns:

-4-

a .38 revolver with black tape wrapped around the handle and a .45 caliber semi-automatic pistol with an obliterated serial number.

The defendant was taken to Cranston police headquarters and, later that same day, two detectives interrogated him. The defendant waived his Miranda rights, see Miranda v. Arizona, 384 U.S. 436 (1966), and agreed to speak with them.

During this recorded interview, the defendant disclosed that he and the other occupants of the two cars had been planning to rob a marijuana trafficker.[1] He knew that guns would be involved in the heist and stated that they had been placed in the Maxima before he entered the car. He later changed his tune and said that he thought that the guns were in the Acura.

The defendant further explained that he and his confederates had attended a family cookout shortly before sojourning to Paine Avenue. The cookout took place on the evening of June 19, and Dempsey encountered the Maxima and the Acura shortly after midnight on June 20.

The defendant stated that the semi-automatic pistol belonged to Alexander Collins (one of the occupants of the Acura) and that he had seen it tucked into Collins's waistband at the

---

[1] The defendant disputes that the jury could have found that he admitted intending to participate in the planned robbery. This position elevates hope over fact. We have carefully examined both the video and audio of the recorded interview, and we find virtually inescapable the conclusion that the defendant admitted to being part and parcel of the planned robbery.

-5-

cookout. The defendant accurately described the revolver as the one with "tape on it," even though the police had made no mention of the presence of tape. He claimed that this firearm, too, belonged to an occupant of the Acura.

The defendant went on to say that, at the cookout, he noticed Collins passing the revolver to a family member who just "got out [of prison] on a gun charge." The defendant says that he took the revolver from this person and hid it behind a "little rock."

Against this evidentiary backdrop, we turn to the defendant's principal plaint. To support a conviction under 18 U.S.C. § 922(g)(1), the offense charged in count 1, the government had to prove beyond a reasonable doubt that the defendant was a convicted felon who knowingly possessed a firearm in circumstances that implicated interstate commerce. See United States v. Staula, 80 F.3d 596, 604 (1st Cir. 1996). To support a conviction under 18 U.S.C. § 922(k), the offense charged in count 2, the government had to prove beyond a reasonable doubt that the defendant knowingly possessed a firearm that had traveled in interstate commerce and "had the importer's or manufacturer's serial number removed, obliterated, or altered." See United States v. Betancourt, 116 F.3d 74, 75 & n.3 (3d Cir. 1997).

The defendant concedes that he has at least one prior felony conviction, that both the revolver and the semi-automatic

pistol traveled in interstate commerce, and that the latter had an obliterated serial number. As to both counts, then, his sufficiency challenge focuses with laser-like intensity on whether the government's proof was sufficient to establish the common element of knowing possession.

Knowing possession of a firearm may be proved through either actual or constructive possession. See United States v. Liranzo, 385 F.3d 66, 69 n.2 (1st Cir. 2004). Actual possession is "the state of immediate, hands-on physical possession." United States v. Zavala Maldonado, 23 F.3d 4, 6 (1st Cir. 1994). Constructive possession occurs "when a person knowingly has the power and intention at a given time to exercise dominion and control over an object, either directly or through others." United States v. Ocampo-Guarin, 968 F.2d 1406, 1409 (1st Cir. 1992) (internal quotation marks omitted).

Where, as here, the evidence is largely circumstantial, the relevant inquiry asks whether the evidence as a whole, along with plausible inferences favorable to the government, warrants a rational jury in concluding that the government has proved the elements of the offense beyond a reasonable doubt. See United States v. Tierney, 760 F.2d 382, 384 (1st Cir. 1985); Dirring v. United States, 328 F.2d 512, 515 (1st Cir. 1964). In conducting this inquiry, we are not required to examine each sliver of evidence in splendid isolation. Rather, we must appraise the

totality of the evidence, mindful that "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it." Bourjaily v. United States, 483 U.S. 171, 179-80 (1987). This approach recognizes the verity that "[t]he sum of an evidentiary presentation may well be greater than its constituent parts." Id. at 180; Ortiz, 966 F.2d at 711.

Viewed through this prism, the defendant's argument withers. Drawing plausible inferences, a rational jury could find — as this jury did — that the government proved beyond a reasonable doubt that the defendant knowingly possessed both firearms. The jurors heard testimony that the guns were stored in the trunk of the Maxima near the opening of a pass-through that connected the trunk with the center of the back seat. This was in close proximity to the defendant and within easy reach of where he had been "moving around." The defendant ignored Dempsey's repeated orders to come out of the car, instead moving toward the armrest. He initially refused to raise his hands, keeping them out of Dempsey's line of vision. This was especially significant because the police later discovered that the armrest, which normally covered the pass-through, was ajar. Moreover, the defendant had planned to take part in a robbery and knew that guns would be involved (indeed, he had handled the revolver only hours before his apprehension). Last — but far from least — the defendant admitted

to the police that he knew the guns were in the Maxima.[2]  The totality of this evidence easily supports an inference that the defendant was in constructive possession of the guns.

To say more about this claim of error would be supererogatory.  Jurors have the right — indeed, the obligation — to use their common sense in evaluating and drawing inferences from circumstantial evidence.  Viewing the record as a whole and using their common sense, the jurors in this case rationally could have inferred that when Dempsey stopped the Maxima the defendant had knowing and intentional dominion and control over the firearms and, thus, constructively possessed them.  See, e.g., United States v. Robinson, 473 F.3d 387, 399-400 (1st Cir. 2007) (finding evidence of constructive possession sufficient where defendant had access and opportunity to store guns in engine compartment); Liranzo, 385 F.3d at 69-70 (holding evidence sufficient to establish constructive possession of gun by front-seat passenger where gun was found beneath seat); see also United States v. Chapdelaine, 989 F.2d 28, 33-34 (1st Cir. 1993).  It follows inexorably that the district court did not err in denying the defendant's Rule 29 motion for judgment of acquittal.

---

[2]  The fact that the defendant later contradicted this admission did not drain it of probative value.  When there are two conflicting versions of a single event, it is for the jury to decide which version, if either, should be given credence.  See United States v. Nascimento, 491 F.3d 25, 46-47 (1st Cir. 2007); United States v. Gobbi, 471 F.3d 302, 311 (1st Cir. 2006).

-9-

The defendant's remaining claims of error relate to the admission of evidence. When objections have been preserved, we review a district court's evidentiary rulings for abuse of discretion. Walker, 665 F.3d at 228; United States v. Rodríguez-Vélez, 597 F.3d 32, 40 (1st Cir. 2010).

The defendant insists that the district court abused its discretion in admitting evidence of his statements about the robbery scheme and his handling of the revolver at the cookout. In the defendant's view, this evidence was both irrelevant and unfairly prejudicial. We deal sequentially with these preserved objections.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Trial courts are afforded wide latitude in determining whether evidence crosses this low threshold, and we will not disturb an exercise of that discretion unless an abuse looms. United States v. Saccoccia, 58 F.3d 754, 780 (1st Cir. 1995).

In the case at hand, the district court did not abuse its discretion in deeming the defendant's statements relevant to the issue of whether he knowingly possessed the guns found in the Maxima. These statements had a discernable tendency to make clear the chain of events and to shed light upon the defendant's

-10-

knowledge of the guns and his motive and opportunity to possess them.[3]  Because the case turned on the issue of knowing possession, their relevance is apparent.  See, e.g., United States v. González, 110 F.3d 936, 942 (2d Cir. 1997); United States v. Ladd, 885 F.2d 954, 959 (1st Cir. 1989).

The defendant's second objection implicates Federal Rule of Evidence 403.  Rule 403 provides that: "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  The delicate balance between probative value and prejudicial effect is fact-specific and, within broad limits, is best struck by the trial court.  Walker, 665 F.3d at 229.  "Only rarely — and in extraordinarily compelling circumstances — will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect."  United States v. Pires, 642 F.3d 1, 12 (1st Cir. 2011) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988)).

---

[3] Although the required showing is merely a showing of knowing possession, evidence of motive and opportunity can serve as circumstantial evidence that helps to show constructive possession. See United States v. Meadows, 571 F.3d 131, 145 (1st Cir. 2009).

In this instance, the probative force of the challenged evidence is manifest. To be sure, that evidence was, as the defendant laments, inimical to his cause. But the defendant has not shown that any <u>unfair</u> prejudice outweighed its probative value. Most evidence is prejudicial — that is why one side or the other seeks to introduce it — and the mere fact that evidence hurts a party's case does not make its admission problematic. It is only unfair prejudice that weighs in the Rule 403 balance, <u>see</u> <u>United States</u> v. <u>Raymond</u>, 697 F.3d 32, 39 (1st Cir. 2012); <u>United States</u> v. <u>Rodríguez-Estrada</u>, 877 F.2d 153, 156 (1st Cir. 1989), and we see no unfair prejudice here.

We note, moreover, that the district court gave a limiting instruction specifically designed to minimize any risk of unfair prejudice:

> Now, you've heard evidence that at a cookout on the evening before the date charged in the indictment the Defendant previously possessed the firearm, the .38 caliber with the tape on it. The indictment does not charge the Defendant with possessing a firearm at that cookout, but rather charges him with possessing at least one firearm at the time of the automobile stop by the Cranston police.
>
> You may not use this evidence to infer that because of his character the Defendant carried out the acts charged in this case. You may consider this evidence only for limited purposes, and those are as follows: The limited purpose of deciding, one, whether the Defendant had a state of mind or intent necessary to commit the crime that is charged in the indictment; or two, whether the Defendant had a motive or opportunity to

-12-

> commit the acts charged in the indictment; or three, whether the Defendant acted in accordance or according to a plan or in preparation for the commission of a crime; or four, whether the Defendant committed the acts that he is on trial for by accident or by mistake. So remember, these are the only purposes for which you may consider evidence of the Defendant's prior similar acts. Even if you find the Defendant may have committed a similar act in the past, this is not to be considered as evidence of character to support an inference that the Defendant committed the acts charged in the indictment.

Before us, the defendant suggests that this limiting instruction was not adequate to address the risk of unfair prejudice.

There is, however, a conspicuously large fly in the ointment: the defendant neither asked for any limiting instruction nor objected at trial to the one given by the district court. When a defendant does not interpose a contemporaneous objection to a limiting instruction, we will review an afterthought complaint about the instruction only for plain error. See United States v. Gómez, 255 F.3d 31, 37 (1st Cir. 2001); United States v. Paniagua-Ramos, 251 F.3d 242, 245-46 (1st Cir. 2001).

Plain error review is rarely appellant-friendly. To establish plain error, an appellant must show "(1) that an error occurred (2) which was clear or obvious and which not only (3) affected the defendant's substantial rights, but also (4) seriously impaired the fairness, integrity, or public reputation of judicial proceedings." United States v. Duarte, 246 F.3d 56, 60 (1st Cir. 2001). This is a daunting standard and, not surprisingly, "[i]t is

-13-

the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." See Henderson v. Kibbe, 431 U.S. 145, 154 (1977).

The defendant in this case does not come close to making the requisite showing. While the instruction may not have been ideal, it did make clear that the jury could not use the defendant's earlier handling of a firearm as a proxy for the elements of the charged crimes. We discern no plain error.

In an effort to snatch victory from the jaws of defeat, the defendant notes that the district court's limiting instruction drew heavily on Federal Rule of Evidence 404(b). He asserts that "application of the Rule 404(b) criteria employed in the limiting instruction to the gun statement demonstrates that this statement has no special relevance independent of its tendency to show criminal propensity." We do not agree.

The defendant's statements regarding his prior handling of the revolver were introduced as circumstantial evidence of at least one of the charged crimes (knowing possession of the revolver). As we already have explained, this evidence was relevant to establish the defendant's knowledge of the revolver and his motive and opportunity to possess it. Under the circumstances, the district court's use of the Rule 404(b) framework in its limiting instruction was an appropriate way to focus the jurors on

-14-

the purposes for which the evidence could legitimately be considered and to guard against any improper use of it.  Cf. United States v. Powell, 50 F.3d 94, 100 (1st Cir. 1995) (upholding admissibility of evidence under Rule 404(b) where trial court determined that the evidence had special relevance to whether defendant had opportunity to obtain firearms and knowledge of the availability of firearms).

We need go no further.  The short of it is that the district court did not abuse its discretion in admitting the challenged evidence.  Nor did it commit plain error in framing its limiting instruction.

**Affirmed.**