# United States Court of Appeals
## For the First Circuit

No. 13-1070

UNITED STATES OF AMERICA,

Appellee,

v.

MARCELINO GUZMÁN-MONTAÑEZ,

Defendant-Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Gelpí,* District Judge.

Víctor J. González-Bothwell, First Assistant Federal Public Defender, with whom Héctor E. Guzmán-Silva, Jr., Federal Public Defender, Héctor L. Ramos-Vega, Assistant Federal Public Defender, and Liza L. Rosado-Rodríguez, Research and Writing Specialist, were on brief for appellant.
Luke V. Cass, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Nelson Pérez-Sosa, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

June 13, 2014

---

* Of the District of Puerto Rico, sitting by designation.

**GELPÍ, District Judge**. A jury in the District of Puerto Rico convicted Marcelino Guzmán-Montañez ("Guzmán") for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("count one"), and for possession of a firearm in a school zone in violation of 18 U.S.C. §§ 922(q)(2)(A) & 924(a)(4) ("count two"). The District Court sentenced Guzmán to 60 months of imprisonment as to both counts.

On appeal Guzmán raises the following claims of error. First, he argues that the district court improperly admitted evidence that was both irrelevant and unfairly prejudicial. Second, he posits that the evidence presented by the government during trial was insufficient to sustain his convictions as to both counts. Finally, he contends that the sentence imposed upon him was procedurally and substantively unreasonable. We affirm the conviction and sentence as to the felon in possession count. However, we reverse the conviction and sentence as to the possession of a firearm in a school zone count. We discuss Guzmán's claims seriatim.

## I.        Relevant Factual and Procedural Background

During the morning hours of March 14, 2012, Santiago Nieves-Rivera ("Nieves"), owner of a lechonera[1] restaurant in

---

[1]      In Puerto Rico lechón is roasted pork, and lechoneras are generally open air establishments where the entire animal is cooked rotisserie style. Fritters and alcoholic beverages are also sold.

Bayamón, Puerto Rico, saw a burgundy-colored car drive slowly by his establishment. Just then, the vehicle backed up and returned to his establishment. Two men exited the vehicle. They approached Nieves to order fritters. One of these men was Guzmán. Nieves found the situation very suspicious. Nervous, afraid, and while firmly holding his machete, Nieves asked both men to leave. At that moment, he noticed a silver gun tucked on the side of the waist of one of the men as they were exiting. The man carrying the gun was later identified as "the skinny one" (hereinafter "the other suspect"). As soon as they left, Nieves called the police and reported the events. He provided a physical description of the suspects and their vehicle, a burgundy Suzuki SX4 with licence plate number HPH 299. Nieves did not see Guzmán carrying a gun.

The event was broadcast over the police radio as an attempted robbery. Police Officer Carmen Nieves de Jesús ("Nieves de Jesús"), while on patrol duty, subsequently saw two men exiting a vehicle parked in front of a Church's Chicken fast food restaurant at the Rexville Shopping Center in Bayamón. The men and vehicle matched the description she heard over the radio. Quickly, she reported her identification of the individuals via radio broadcast. Officer Edilberto Mojica-Caldero ("Mojica") was patrolling the area together with officer José Arroyo-Pérez ("Arroyo-Pérez"). They heard Nieves de Jesús's radio call and

headed towards the area. At the time, both police officers were wearing civilian clothing.

As Mojica and Arroyo-Pérez approached the Church's Chicken parking lot, they spotted the burgundy Suzuki vehicle. Arroyo-Pérez remained near the vehicle while Mojica observed the two men from outside the fast food restaurant. Mojica watched as Guzmán stood in line to order food. Then, he noticed a black pistol protruding from Guzmán's waistband.

From that moment on, the following events took place rapidly. Outside, marked patrol cars arrived. Immediately, the other suspect approached Guzmán and whispered something in his ear. Without delay, Guzmán left the line and walked quickly towards the bathroom. He entered the bathroom for a brief moment. As Guzmán exited the bathroom, Mojica entered the restaurant and detained both men. However, Guzmán was no longer carrying in his waistline the object Mojica had seen on him moments earlier. As the suspects were detained, officers Arroyo-Pérez and Ismael Díaz-Rivera ("Díaz") entered the bathroom searching for additional suspects. None were found.

Following the other officers' search, Mojica then searched the bathroom and found a pistol in the diaper changing station. The pistol was in plain sight, stuck between the plastic partitions of the diaper changing station. The firearm was a black Smith and Wesson pistol, model 4003 tactical, .40 caliber. The

police officers who searched the bathroom before Mojica did not see the weapon.  In turn, Guzmán and the other suspect were placed under arrest.  Shortly thereafter, the police officers searched the burgundy Suzuki vehicle.  They seized a silver Beretta pistol found inside the glove compartment.  The weapon matched the description of the gun Nieves reported seeing the other suspect carry at the lechonera.

On March 15, 2012, a complaint was filed against Guzmán charging him with being a convicted felon in possession of a firearm.  Shortly thereafter, a federal grand jury returned a two-count indictment.  Both counts charged Guzmán with possessing a Smith and Wesson pistol, Model 4003 tactical, serial number VJL7561, .40 caliber.  Count one charged Guzmán with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1).  Count two, in turn, charged him with possessing a firearm in a school zone in violation of 18 U.S.C. §§ 922(q)(2)(A) & 924(a)(4).  Guzmán exercised his constitutional right to trial by jury.

Prior to trial, Guzmán moved in limine to exclude Mojica's testimony relating to the silver Beretta pistol seized from the vehicle following the arrest. The District Court reserved its ruling.

During trial, Mojica testified about the silver Beretta pistol seized in the vehicle.  Guzmán renewed his objection arguing, once again, that the Beretta pistol was immaterial,

irrelevant to the charges, and had a prejudicial effect because it was not the weapon he was charged with possessing. The District Court overruled the objection, permitted the testimony, and gave the jury the following instruction:

> All right. Ladies and gentlemen of the jury, this weapon has nothing to do with this case. It was just part of the inventory that was made by the police and found by Agent Mojica. But the -- Mr. Guzmán is not on trial for possession of this particular weapon, the one that was found in the car. Okay? All right.

The court provided a second instruction during Mojica's testimony, following his description of the silver Beretta pistol, and its admission as an exhibit:[2]

> Ladies and gentlemen, I want to stress to you again that this is a different pistol from that found in the bathroom. And that Mr. Guzmán is not charged with possession of this Beretta pistol. Is that understood? Okay. Go ahead.

Guzmán moved for a mistrial arguing the silver Beretta weapon found in the vehicle constituted irrelevant, prejudicial and inflammatory evidence. The government, in turn, argued that the evidence was necessary to provide the jury with the complete factual scenario of what transpired. The District Court denied Guzmán's request.

---

[2]    A third instruction regarding the Beretta pistol was provided to the jurors together with the rest of the jury instructions before deliberation.

Regarding the second count, to prove that the events took place within a school zone, in violation of 18 U.S.C. §§ 922(q)(2)(A) & 924(a)(4), the prosecution used Mojica's testimony to establish the proximity between Church's Chicken and the Colegio Emmanuel Discípulos de Cristo ("the school"), as well as Guzmán's knowledge of being within the requisite distance. According to Mojica, the school is located 300 feet away from Church's Chicken and is visible from inside the establishment.[3] The government also submitted as evidence a picture of the school's main gate.

After the prosecution rested, Guzmán filed a motion for acquittal under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the prosecution's evidence was insufficient to sustain his convictions. The District Court denied Guzmán's motion as to count one and reserved its judgment as to count two.

The jury convicted Guzmán on both counts. After the verdict, Guzmán filed a subsequent motion under Rule 29 as to count two, since the District Court had not yet ruled on his earlier acquittal motion. The Court denied Guzmán's motion for acquittal.

The pre sentence report ("PSR"), prepared by the United States Probation Office, recommended a combined base offense level of 14, pursuant to U.S.S.G. § 2K2.1(a)(6), and a two-level (2)

---

[3] The parties had previously stipulated that the fast food restaurant was located 140 feet from the school.

enhancement for stolen firearms, pursuant to U.S.S.G. § 2K2.1(b)(4)(A), yielding a total offense level of 16 with Criminal History Category I. The applicable sentencing range for these calculations was 21 to 27 months, with no statutory minimum sentence.

The government argued for a sentence of 72 months. The District Court imposed a sentence of 60 months of imprisonment. The Court based its variance on Guzmán's criminal history and the nature of the offense.

## II.     Discussion

### A.     Admission of the Gun Evidence

To prove Guzmán was in possession of the firearm charged in the indictment, the government presented evidence of both the black Smith and Wesson pistol found in the bathroom at Church's Chicken, and the silver Beretta pistol recovered from the burgundy Suzuki vehicle. Guzmán argues that the Beretta pistol was irrelevant and, thus, the District Court abused its discretion by admitting it as evidence. He asserts that the silver Beretta pistol is completely unrelated to the elements of the offense and that the erroneous admission of such irrelevant evidence caused unfair prejudice which, in turn, influenced the jury's verdict. At trial, Guzmán argued as follows:

> The Government is now going to do pictures relating to the search of the vehicle, of the gun. I move for a mistrial based on the inflammatory nature of this, the fact that it

has prejudicial effect. As the Court correctly stated, it really has nothing to do with the case, he's not charged with it. And under 402 and 403 it's immaterial, irrelevant and has prejudiced the jury as to the fact -- because, remember, there's the testimony of Papo Nieves saying he saw a weapon on the slim defendant, which we now know to be Miguel. So now they can make the comparison that that is the gun that was in the vehicle or that might be the gun that was in the bathroom....

The government, in turn, argued below that without evidence of the silver Beretta pistol, the jury would be deprived of the complete set of facts and could become confused:

> Our position is that if we don't do that, maybe they are misled. Because the first witness said that he saw a pistol on Miguel. So now we are entering this evidence as there was another firearm. And also admit the description of the firearm described by the first witness. So we are not misleading the jury in the sense --

At trial, Guzmán timely objected, on more than one occasion, to the testimony regarding the Beretta pistol, and the introduction of the weapon as an exhibit. The argument having been preserved for appeal, we review the District Court's ruling for abuse of discretion. United States v. Williams, 717 F.3d 35, 40 (1st Cir. 2013). We proceed to discuss Guzmán's arguments regarding the admission of evidence accordingly.

### 1. Relevance

Guzmán argues that evidence of the silver Beretta pistol seized is irrelevant. We disagree. As he correctly points out, the Beretta pistol is not the firearm charged in the indictment.

-9-

Albeit true, such fact is not dispositive of this evidentiary issue, and it does not automatically entail its irrelevance. This second weapon was important to the prosecution's case to the extent that it corroborated the fact that Guzmán and the other suspect each had a different weapon.

Rule 401 of the Federal Rules of Evidence defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "Evidence may be 'relevant' under Rule 401's definition, even if it fails to prove or disprove the fact at issue-whether taken alone or in combination with all other helpful evidence on that issue." United States v. Candelario-Silva, 162 F.3d 689, 704 (1st Cir. 1998)(quoting United States v. Schneider, 111 F.3d 197, 202 (1st Cir. 1997)).

Mojica narrated the events that took place at Church's Chicken, starting from his observations while he stood outside the restaurant, all the way up to the arrests of both individuals and the seizing of both weapons. His testimony corroborated the government's theory that Guzmán was in possession of the black Smith and Wesson pistol, while the other suspect carried the silver Beretta pistol, as initially observed by Nieves at the lechonera.

We thus conclude that in the case before us the District Court did not err by admitting as relevant evidence the existence of the silver Beretta pistol.

## 2.    Federal Rule of Evidence 403

Guzmán next contends that the District Court abused its discretion under Rule 403 of the Federal Rules of Evidence by admitting evidence of the silver Beretta pistol, thus creating unfair prejudice. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. Guzmán posits that the evidence dangerously invited the jury to infer that he was in possession of a weapon because he arrived in a vehicle where another gun was found.

Time and again this court has afforded considerable deference to a district court's evidentiary balancing act. "We usually defer to the district court's balancing under Rule 403 of probative value against unfair prejudice." United States v. Smith, 292 F.3d 90, 99 (1st Cir. 2002). "Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." United States v. Currier, 836 F.2d 11, 18 (1st Cir. 1987) (quoting Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988)). "[T]he law shields a defendant against

-11-

unfair prejudice, not against all prejudice." Smith, 292 F.3d at 99. "[A]ll evidence is meant to be prejudicial; it is only unfair prejudice which must be avoided." United States v. Rodríguez-Estrada, 877 F.2d 153, 156 (1st Cir. 1989). Without a doubt, evidence presented by the government in a criminal case is always prejudicial to the defendant. "If it were not, the prosecution would not be introducing it. . . . In conducting this balancing test, the district court has especially wide latitude, and Rule 403 tilts the balance in favor of admission." Candelaria-Silva, 162 F.3d at 705 (citations omitted)(internal quotation marks omitted).

At trial, Guzmán challenged the inflammatory nature of the silver Beretta pistol due to the fact that "nowadays, people don't like guns." The District Court was not required to shield Guzmán from the social dislike of weapons prompted by Puerto Rico's significantly high criminality rate. This does not create a per se automatic unfair prejudicial effect.

Moreover, the District Court was emphatic that the silver Beretta pistol was not the weapon Guzmán was charged with in the indictment. We find that the instructions given by the District Court were clear and sufficient, and adequately eliminated any potential confusion or unfairly prejudicial inferences the jury could have been inclined to make. See United States v. Sepúlveda, 15 F.3d 1161, 1184 (1st Cir. 1993) ("[C]ourts have long recognized

that, within wide margins, the potential for prejudice stemming from improper testimony. . . can be satisfactorily dispelled by appropriate curative instructions."). For the foregoing reasons, we find no evidentiary errors with respect to the admission of the silver Beretta pistol.

**B.      Sufficiency of the Evidence**

Guzmán also argues he was entitled to a judgment of acquittal on both counts. We review the District Court's denial of a Rule 29 motion de novo. United States v. Pérez-Meléndez, 599 F.3d 31, 40 (1st Cir. 2010).

When evaluating the sufficiency of evidence, "we draw the facts and all reasonable inferences therefrom in the light most agreeable to the jury verdict." Williams, 717 F.3d at 38; see also United States v. Walker, 665 F.3d 212, 224 (1st Cir. 2011). This is not an easy challenge for an appellant. "Defendants challenging convictions for insufficiency of evidence face an uphill battle on appeal." United States v. Hernández, 218 F.3d 58, 64 (1st Cir. 2000).

### 1.    Knowing possession of a firearm

To sustain a conviction under 18 U.S.C. § 922(g)(1) the government has to prove beyond a reasonable doubt that the defendant: 1) was a convicted felon; and 2) knowingly possessed a firearm; 3) in circumstances that implicated interstate commerce. Williams, 717 F.3d at 38 (citing United States v. Staula, 80 F.3d

596, 604 (1st Cir. 1996)).  Here, the parties stipulated that, pursuant to 18 U.S.C. § 922(g)(1), Guzmán was a convicted felon, and that the firearm was transported through the channels of interstate commerce.  Hence, to sustain a conviction, the prosecution's burden was limited to proving the "knowing possession" element.  Guzmán argues the prosecution failed to prove this element beyond a reasonable doubt because Mojica's testimony was insufficient.  We disagree.

"Knowing possession of a firearm" may be proven through either actual or constructive possession.  United States v. Liranzo, 385 F.3d 66, 69 (1st Cir. 2004).  Actual possession is the state of immediate, hands-on physical possession. United States v. Zavala-Maldonado, 23 F.3d 4, 6 (1st Cir. 1994).  Constructive possession can be established by proving that the person has the power and intention of exercising dominion and control over the firearm.  United States v. DeCologero, 530 F.3d 36, 67 (1st Cir. 2008).  Either form of possession can be proven by way of direct or circumstantial evidence.  United States v. Rodríguez, 457 F.3d 109, 119 (1st Cir. 2006).  We have also held that a conviction may be entirely supported by circumstantial evidence.  United States v. Wight, 968 F.2d 1393, 1398 (1st Cir. 1992).

In United States v. Robinson, we found that evidence of a defendant's opportunity to store guns in an engine compartment was sufficient to establish constructive possession.  473 F.3d 387,

-14-

398-99 (1st Cir. 2007). "[A]s long as a convicted felon knowingly has the power and the intention at a given time of exercising dominion and control over a firearm or over the area in which the weapon is located, directly or through others, he is in possession of the firearm." Wight, 968 F.2d at 1398.

In the case before us, Mojica testified he saw a weapon on Guzmán's waist before he entered the bathroom. When Guzmán became aware of the police officers arriving at the scene, he stepped out of the line and walked towards the bathroom. Moments later, Mojica saw Guzmán exit the bathroom where the weapon was found. A rational jury could have concluded that Guzmán's actions reflected his ability and intention to exercise dominion and control over the firearm. He was seen with the pistol before entering the bathroom, and was without it when he walked out. He was also the last person to enter and exit the bathroom before the weapon was found. Mojica's observations, thus, provided sufficient evidence to prove Guzmán was in constructive possession of the Smith and Wesson firearm found in the bathroom.

Standing alone, Mojica's testimony is circumstantial evidence sufficient to demonstrate Guzmán was in constructive possession of the Smith and Wesson. In addition, the prosecution introduced into evidence the restaurant's surveillance video which shows Guzmán walking into the bathroom and then exiting, upon the arrival of the other police officers to the restaurant.

-15-

Guzmán maintains that, because Mojica's testimony was, in his view, clearly inconsistent with the testimony of the other police officers, it is insufficient to sustain his conviction. He further argues that, because he denied having possessed the firearm, additional objective evidence was needed to corroborate the conflicting evidence. This argument is unconvincing. The mere existence of conflicting testimony does not render evidence insufficient. United States v. Calderón, 77 F.3d 6, 10 (1st Cir. 1996)(explaining that it falls within the jury's province whether it chooses to believe a witness's testimony over another). "Evidence does not become legally insufficient merely because of some inconsistencies in witnesses's testimony." Rodríquez, 457 F.3d at 119. Conflicting theories are for the factfinder to decide, not for us to entertain. United States v. López-López, 282 F.3d 1, 19 (1st Cir. 2002).

In this case, the jury had two stories from which to choose. The prosecution theorized that, as Guzmán stood in line at the fast food restaurant, he was alerted that policemen arrived. That is why he abandoned his place in line, entered the bathroom, hid the weapon in the diaper changing station, and, as he exited the bathroom, was detained. On the other hand, Guzmán denied having possessed any weapon or having left the line to enter the bathroom.

When the issue lies on credibility of the evidence, it is up to the jury to decide. The factfinder is free to conduct its own interpretation of the evidence. Wight, 968 F.2d at 1938. The fact that the jury opted to give more weight to one version of the facts over another is not for us to review. United States v. Ortiz, 966 F.2d 707, 711 (1st Cir. 1992)("On appeal, it is not the appellate court's function to weigh the evidence or make credibility judgments. Rather, it is for the jury to choose between varying interpretations of the evidence.")(citing United States v. Maraj, 947 F.2d 520, 523 (1st Cir. 1991)). Here, we must determine whether the jury's verdict is supported by a "plausible rendition" of the totality of the circumstance.

The court's duty is to make sure the evidence is sufficient to support the conviction. "We do not atomize our analysis. We consider the evidence in its totality, not in isolation, and the government need not negate every theory of innocence." United States v. Angulo-Hernández, 565 F.3d 2, 7 (1st Cir. 2009).

The evidence provided by the government was sufficient. Mojica's depiction of the facts offered a plausible rendition of Guzmán's alleged possession of the firearm. Said rendition of the facts convinced the jury. We therefore reject Guzmán's sufficiency of the evidence challenge to count one.

2.      <u>Possession of a firearm within a school-zone</u>

Under 18 U.S.C. § 922(q)(2)(A) "[i]t shall be unlawful for any individual knowingly to possess a firearm that has moved in or that otherwise affects interstate or foreign commerce at a place that the individual knows, or has reasonable cause to believe, is a school zone."  A school zone is an area within a school or "within a distance of 1,000 feet from the grounds of a public, parochial or private school."  18 U.S.C. § 921 (a)(25); <u>see</u> <u>United States</u> v. <u>Nieves Castaño</u>, 480 F.3d 597 (1st Cir. 2007).  Guzmán contends that the prosecution's evidence was insufficient to prove the requisite element that he knew or reasonably should have known he was in a school zone while possessing a firearm.  We agree.

Colegio Emmanuel de Discipulos de Cristo is a school, as defined by 18 U.S.C. § 922(q)(2)(A), that teaches pre-kindergarden to  sixth grade.  The school is located on Route 167, across the street from Rexville Shopping Center in Bayamon, where the Church's Chicken is located.  The parties stipulated the distance between Church's Chicken and the school was less than 1,000 feet.[4]

At trial Mojica stated that the school was visible from within the establishment, but provided no additional information. No other witness testified as to this matter.  Mojica's entire testimony follows:

---

    [4]    As discussed earlier, the exact distance stipulated was 140 feet.  However, at trial, Mojica indicated that his measurement of the location yielded a distance of less than 300 feet.

-18-

MS. MONTANEZ: Q. All these events took place -- this in particular of the Church and the finding of the Smith & Wesson pistol - in Church. What is nearby that restaurant?

A. In the front side of the establishment there's a bilingual school for children, primary level.

Q. And how far is that school from the Church's restaurant?

A. I'd say less than 300 feet.

Q. Okay. And how do you know that?

A. I measured it.

Q. Can you see the school from the Church?

A. Correct, yes.

Q. How do you measure the distance from the Church's Chicken restaurant to the school?

A. With a scene measuring device from the traffic unit in Bayamón. From the door --

. . .

THE WITNESS: From the door towards the main gate of said school.

BY MS. MONTANEZ:

Q. And that scene measuring device you took it from where, you said?

A. That was given to me by one of the agents of the traffic division in Bayamón which -- and it's used for investigation of deathly accidents.

Q. From which door you started your measurement?

A. From the main door of the establishment. That's the one I went through.

Q. Until?

A. Up to the main gate of Emmanuel school. That's the name of it.

MS. MONTANEZ: I have no more questions, Your Honor.

THE COURT: I have -- let me -- when you say the school main gate, do you mean the school has a fence?

THE WITNESS: Correct, yes.

THE COURT: And the gate is on that fence, and you measured to that point.

THE WITNESS: Up to the entrance gate. Yes, sir.

THE COURT: All right. Thank you. Cross-examination?

-19-

MS. MONTANEZ: Your Honor, I have, before the defense goes, the picture of the school.
THE COURT: Well, you're going to have to show it to --
MS. MONTANEZ: Yes. We can mark this as Government ID 14. (NOTE: Document being provided to the witness.)
Q. I'm showing you what has been marked as Government ID No. 14. Do you recognize that identification?
A. Yes. This is school area which is across the - from the shopping center.
Q. And why do you recognize that identification?
A. I go by it every day.
MS. MONTANEZ: Your Honor, we move into evidence Government's Identification No. 14.
THE COURT: Any objection, Mr. --
MR. GONZALEZ: No objection, Your Honor.
THE COURT: Without objection, admitted as Government's Exhibit No. 14. Do you want to publish it? (NOTE: Document retrieved from the witness.)
BY MS. MONTANEZ:
Q. I'm showing you what has been marked as Government Exhibit number 14. What does this picture show?
A. That's Emmanuel school.
Q. And is that -- this is the fence you were referring to that you measured -- up until the point you measured from the Church Chicken door (indicating)?
A. Correct. Yes.

Relying exclusively on the school's proximity, the prosecution took no additional measures to provide grounds to evince that Guzmán knew, or reasonably should have known, that he was in a school zone. Instead, it relied on the closeness factor as per se probative of Guzmán's awareness. Mojica specifically testified that the school, and its main gate, were visible from Church's Chicken. The record, however, shows that he failed to

testify that the school's sign was visible from Church's Chicken. In fact, the school sign was first mentioned after the prosecution rested its case.

In United States v. Haywood, 363 F.3d 200 (3rd Cir. 2004), the Court of Appeals for the Third Circuit reversed a conviction under § 922(q)(2)(A) on insufficiency grounds. As in the case before us, appellant similarly argued that providing evidence of a school's distance was insufficient to establish his knowledge of a school zone. The court agreed. "[T]he only evidence that the government produced to support this conviction is that the school is, in fact, within 500 feet of the [locale where Haywood was found armed]. However, that is not sufficiently conclusive to enable a reasonable juror to draw the inference that Haywood knew or should have known of that proximity." Haywood, 363 F.3d at 209. We find said ruling to be squarely on point.

It is likely that the prosecution could have shown that Guzmán had the knowledge of the nearby school, but it failed to introduce such evidence at trial. Juxtaposing the location of the fast food restaurant with the school is not enough. Additional facts were necessary, and could have easily been proven by way of testimony of police officers who were at the scene, as well as photographs or a video demonstrating that any reasonable person at the Church's Chicken would have indeed become aware of being in a school zone. The prosecution likewise could have also demonstrated

-21-

that to get to the establishment Guzmán inevitably would have driven by the school. More so, because Guzmán did not live in the neighborhood, his awareness had to be readily proven. <u>Cf.</u> <u>Nieves-Castaño</u>, 480 F.3d at 604 ("Here, three minor children lived with the defendant, and it would be easy for a jury to conclude that she knew there were two schools nearby, within or just outside her housing project and less than 1000 feet away, and that she regularly passed by those schools. One school was, in fact, located next to the south entrance of the housing project."). In the case before us the government asked the jury to take a giant leap of faith, which falls considerably short of sufficiently proving its case.

The evidence presented by the government was insufficient to establish that Guzmán knew or reasonably should have known he was in a school zone. Consequently, the conviction as to count two must be vacated.

**III.     Conclusion**

For the reasons explained above, we **AFFIRM** the conviction on count one, **REVERSE** the conviction on count two, and **REMAND** for resentencing proceedings consistent with this opinion.[5]

---

[5]     Guzmán argues that the sentence imposed upon him was both procedurally and substantively unreasonable. Having remanded the case for resentencing we need not address these arguments at this time. During his resentence Guzmán will have an opportunity to argue for what he understands to be an appropriate sentence. <u>See</u> <u>United States</u> v. <u>Bryant</u>, 643 F.3d 28, 34 (1st Cir. 2011)(citing <u>Pepper</u> v. <u>United States</u>, ___ U.S. ___, 131 S.Ct 1229 (2011)).